1
2
3
4              UNITED STATES DISTRICT COURT
5            NORTHERN DISTRICT OF CALIFORNIA
6
7    CARLOS CALVILLO,                    Case No. 22-cv-05693-PCP
8              Plaintiff,                **ORDER GRANTING MOTION FOR**
                                         **SUMMARY JUDGMENT; DENYING**
9         v.                             **MOTION FOR SUR-REPLY**
10   J. MARQUEZ,                         Re: Dkt. Nos. 18, 25
11              Defendant.
12
13        Mr. Calvillo, a prisoner incarcerated at the Correctional Training Facility in Soledad,

14   California, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Dkt. No. 1.

15        The Court screened the complaint and found that Mr. Calvillo had pleaded cognizable

16   claims that his First Amendment right to be free of retaliation, his Fourteenth Amendment due

17   process right, and his Fourteenth Amendment right to equal protection were violated during a

18   disciplinary proceeding. *See* Dkt No. 6. Mr. Calvillo alleged these rights were all violated by

19   defendant J. Marquez, a lieutenant at the Correctional Training Facility.

20        Defendant Marquez thereafter moved for summary judgment. Dkt. No. 18 ("MSJ"). Mr.

21   Calvillo filed an opposition, Dkt. No. 21, and defendant filed a reply, Dkt. No. 23. Mr. Calvillo

22   sought leave to file a sur-reply, Dkt. No. 25, which defendant opposed, Dkt. No. 26.

23        Mr. Calvillo's proposed sur-reply does not introduce any new facts and merely repeats

24   arguments raised in his Opposition. For that reason, the Court **DENIES** Mr. Calvillo's motion to

25   file the sur-reply. And for the reasons stated below, the Court **GRANTS** defendant Marquez's

26   motion for summary judgment.

27
28

United States District Court
Northern District of California

I.      **BACKGROUND**

Except as otherwise noted, the following facts are undisputed on the record before the Court on defendant Marquez's motion for summary judgment. The evidence is viewed in the light most favorable to Mr. Calvillo. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (stating that, at summary judgment, courts must view the evidence in the light most favorable to the non-moving party).

A.      **Mr. Calvillo's Conviction and Incarceration**

Mr. Calvillo has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR") since November 24, 2004. *See* CDCR Inmate Locator, https://inmatelocator.cdcr.ca.gov/ (results for "Carlos Calvillo") (last visited March 11, 2024). Mr. Calvillo "maintains that he is a life-term inmate." Opp. at 11. The Inmate Locator, however, shows that Mr. Calvillo is eligible for parole in December 2027, had a "consultation" with the parole board in 2018, and has a "parole suitability hearing" scheduled for the "tentative date" of June 2028.[1]

At all relevant times, Mr. Calvillo served his sentence at the Correctional Training Facility in Soledad, California ("CTF"). *See generally* Compl. (discussing events at CTF).

B.      **The Rules Violation**

On February 10, 2022, CTF's Investigative Services Unit conducted a search of Mr. Calvillo's housing unit.[2] Compl. ¶ 7. Non-defendant Officer Madsen found an altered tablet in Mr. Calvillo's cell. *Id.* ¶ 9; *see also* Dkt. No. 18-1 ("Madsen Decl.") ¶¶ 3–6 & Ex. A. Officer Madsen issued a Rules Violation Report ("RVR") regarding Mr. Calvillo's possession of the contraband. *See* Madsen Decl. ¶ 7 & Ex. A.

Mr. Calvillo contends that the search was observed and supervised by defendant Marquez,

---

[1] The report from CDCR's Inmate Locator is a public record and a proper subject for judicial notice. *See United States v. Lucas*, 841 F.3d 796, 802 (9th Cir. 2016) (taking judicial notice of publicly available information from the Federal Bureau of Prisons inmate locator); *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (same).

[2] The parties alternately refer to this event as a "search," a "raid," and an "investigation." *Compare* Compl. ¶ 7, *with* MSJ, at 3. It is not clear from the record whether this was a broad search or a targeted investigation.

United States District Court
Northern District of California

a lieutenant at CTF. Compl. ¶ 8. Mr. Calvillo contends that, during the search, defendant Marquez "walked the tiers yelling, 'Take out your contraband.'" Dkt. No. 21-1 ¶ 6. Defendant Marquez alternately contends that he "did not take part in the specific search," and that he did take part but his "role … was limited to ensuring Investigative Services Unit (ISU) officers were able to perform their duties." *Compare* Dkt. No. 18-3 ("Marquez Declaration") ¶ 8, *with id.* ¶ 2.

Mr. Calvillo believed that the search did not follow CTF's COVID-19 protocols. Compl. ¶ 8. Mr. Calvillo filed a grievance regarding the failure to follow protocols. *See id.* The grievance blamed the supervising lieutenant for this failure but did not identify defendant Marquez by name. *See id.*

### C. The Disciplinary Hearing

On March 10, 2022, defendant Marquez conducted a disciplinary hearing with respect to the RVR. Compl. ¶ 10; Marquez Decl. ¶ 3.

At the hearing, Mr. Calvillo informed defendant Marquez that he could not preside over the disciplinary hearing because (1) defendant Marquez had supervised the search at issue, and (2) Mr. Calvillo had filed a grievance over the search. Compl. ¶ 11. Mr. Calvillo contends that he informed defendant Marquez that the grievance named him as a wrongdoer. *See id.* Defendant Marquez contends Mr. Calvillo never said the grievance was against him. Marquez Decl. ¶ 9.

Defendant Marquez contends that he informed Mr. Calvillo that his concerns were without merit because the grievance did not concern him. Marquez Decl. ¶ 9. Mr. Calvillo contends that defendant Marquez stated, "I know who the fuck you are and I know all about your 602; you guys are getting worse than all these [black inmates] filing 602's and lawsuits." Compl. ¶ 12. Mr. Calvillo contends he asked defendant Marquez for clarification and defendant Marquez stated, "Well, I find you guilty, and I'm taking away all your shit, clear enough?" *Id.* ¶ 13. Defendant Marquez contends he made no such statements. Marquez Decl. ¶ 14.

At the disciplinary hearing, defendant Marquez described the evidence against Mr. Calvillo. *Id.* ¶ 11. Mr. Calvillo did not present any evidence or witnesses. *Id.* ¶ 10. Defendant Marquez stated that he was finding Mr. Calvillo guilty. *Id.* ¶ 11. Mr. Calvillo contends that defendant Marquez said, "You[']r[e] Mexican Mafia and I'm going to treat you as such" and "You

1    motherfuckers don't have shit coming from me." Compl. ¶ 14. Defendant Marquez contends that

2    Mr. Calvillo's pre-existing Mexican Mafia validation came up in a discussion of CTF's efforts to

3    separate Mexican Mafia and Bulldogs gang members by alternating their programming. Marquez

4    Decl. ¶¶ 11–13.

5           The results of Mr. Calvillo's disciplinary hearing were reviewed and approved by non-

6    defendant Correctional Captain Handley and non-defendant Associate Warden Dunn. *See* Dkt No.

7    18-1 ("Handley Declaration") ¶¶ 9–10. Non-defendant Handley states that he did not view

8    defendant Marquez as biased because "Marquez took no part in writing up or reviewing the RVR

9    prior to the hearing." *Id*. ¶ 11. The record does not reflect whether non-defendants Handley and

10   Dunn were informed that Mr. Calvillo believed defendant Marquez had supervised the search, or

11   whether they were informed that Mr. Calvillo had a pending grievance against defendant Marquez.

12   *See generally* Marquez Decl. & Exs., Handley Decl. & Exs., Madsen Decl. & Exs.

13          **D.    Procedural History**

14          The instant lawsuit was filed around September 21, 2022. *See* Compl. at 14 (signed on that

15   date). The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and concluded that Mr.

16   Calvillo had stated cognizable claims for violations of his First Amendment right to be free of

17   retaliation, his Fourteenth Amendment right to due process, and his Fourteenth Amendment right

18   to equal protection. *See* Dkt. No. 6, at 2–3. Defendant thereafter filed the instant motion for

19   summary judgment on all three claims. Dkt. No. 18.

20   **II.    LEGAL STANDARD**

21          Summary judgment is proper where the pleadings, discovery and affidavits show that there

22   is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as

23   a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who

24   fails to make a showing sufficient to establish the existence of an element essential to that party's

25   case, and on which that party will bear the burden of proof at trial ... since a complete failure of

26   proof concerning an essential element of the nonmoving party's case necessarily renders all other

27   facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it

28   might affect the outcome of the lawsuit under governing law, and a dispute about such a material

United States District Court
Northern District of California

United States District Court
Northern District of California

1   fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

2   nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3       The party moving for summary judgment bears the initial burden of identifying those

4   portions of the record which demonstrate the absence of a genuine dispute of material fact. The

5   burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits,

6   or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts

7   showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

8       The court's function on a summary judgment motion is not to make credibility

9   determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W.*

10  *Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must

11  be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the

12  facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

## III.    DISCUSSION

14      Mr. Calvillo has not identified issues of material fact with respect to any of his claims, so

15  defendant Marquez is entitled to summary judgment.

### A.    Retaliation Claim

17      "Within the prison context, a viable claim of First Amendment retaliation entails five basic

18  elements: (1) An assertion that a state actor took some adverse action against an inmate

19  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

20  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

21  correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

22  Defendant Marquez argues that Mr. Calvillo cannot establish the second or fifth elements of a

23  retaliation claim. MSJ, at 6–7. The Court agrees that Mr. Calvillo has not provided evidence

24  sufficient to establish the fifth element.

25      Mr. Calvillo's theory is that defendant Marquez retaliated against him by finding him

26  guilty of the rules violation alleged in the RVR. *See* Opp. at 4. This is the only retaliatory act taken

27  by defendant Marquez. *See generally id*. This guilty finding, however, "reasonably advance[d] a

28  legitimate correctional goal," *Rhodes*, 408 F.3d at 568, because Mr. Calvillo was admittedly guilty

of the rules violation. The parties do not dispute that the tablet in question belonged to Mr.

Calvillo, that it had been altered, and that the alteration was impermissible. *See generally* Opp. &

MSJ.

Because Mr. Calvillo cannot establish an essential element of his retaliation claim,

defendant Marquez is entitled to summary judgment on this claim.

### B.        Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

*Living Center*, 473 U.S. 432, 439 (1985). A plaintiff alleging denial of equal protection under 42

U.S.C. § 1983 based on a suspect classification, such as race, must plead intentional unlawful

discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.

*Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, Mr. Calvillo alleges that he was found guilty of the violation alleged in the RVR

based on his race. *See* Opp. at 2 (arguing that defendant Marquez found Mr. Calvillo guilty based

on his race). But Mr. Calvillo does not introduce any evidence to support the contention that this

finding was a result of his race rather than his admitted guilt. *Cf. Thornton v. City of St. Helens*,

425 F.3d 1158, 1166–67 (9th Cir. 2005) (explaining that conclusory statements of bias were not

sufficient to prevent summary judgment); *Bingham v. Schreiber*, 341 F.3d 939, 948–49 (9th Cir.

2003) (finding evidence of discriminatory intent insufficient to survive summary judgment where

the plaintiff argued that racial discrimination could be inferred from the fact that he was African-

American, the police officer was white, and there was disagreement about the reasonableness of

the traffic stop). Although defendant Marquez mentioned Mr. Calvillo's affiliation with the

Mexican Mafia, *see* Compl. at 5, 8, this reference to Mr. Calvillo's gang affiliation, standing

alone, does not provide substantial evidence of defendant Marquez's discriminatory intent with

respect to his decision on the RVR. Indeed, Mr. Calvillo admitted in his deposition that he "ha[d]

no idea" whether he was found guilty of the RVR based on his race. *See* Dkt. No. 18-2 ("Guerrero

Declaration"), Ex. A, at 29:6–9. Further, the parties do not dispute that Mr. Calvillo was guilty of

1  the rules violation, and Mr. Calvillo has not produced evidence that prisoners of different races

2  would have been found not guilty under similar circumstances.

3        Accordingly, there is no evidence before the Court to support Mr. Calvillo's claim that

4  defendant Marquez found him guilty because of his race rather than his admitted guilt.

5  Accordingly, defendant Marquez is entitled to summary judgment on this claim.

6        **C.      Due Process Claim**

7        The Due Process Clause of the Fourteenth Amendment protects individuals against

8  governmental deprivations of "life, liberty or property." *Bd. of Regents v. Roth*, 408 U.S. 564,

9  570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995) ("The more familiar office of

10  the Due Process Clause of the Fourteenth Amendment is to provide a guarantee of fair procedure

11  in connection with any deprivation of life, liberty, or property by a state."). In the prison context,

12  the interests protected by the Due Process Clause are generally ones pertaining to liberty. In

13  certain circumstances, however, the loss of an inmate's property may also trigger the Due Process

14  Clause. *See, e.g.*, *Shinault v. Hawks*, 782 F.3d 1053 (9th Cir. 2015) (concluding that the Due

15  Process Clause was implicated where prison officials froze an inmate's trust account).

16        Analysis of a due process claim "proceeds in two steps: We first ask whether there exists a

17  liberty or property interest of which a person has been deprived, and if so we ask whether the

18  procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S.

19  216, 219–20 (2011). Here, Mr. Calvillo has not identified a liberty interest sufficient to trigger the

20  Due Process Clause.

21        The record shows that, as punishment for the rules violation, Mr. Calvillo was assessed 30

22  days of good-time credit; lost 30 days of access to the telephone, canteen, packages, and certain

23  property; and lost access to family visits for 1 year. Marquez Decl., Ex. B, at 12.

24        Mr. Calvillo cannot premise a due process claim upon the forfeiture of good time credit

25  because it is unclear whether this loss will affect the length of his imprisonment. As noted above,

26  Mr. Calvillo is serving an indeterminate sentence. *See* Opp. at 11 ("Plaintiff maintains that he is a

27  life-term inmate"); CDCR Inmate Locator, https://inmatelocator.cdcr.ca.gov/ (results for "Carlos

28  Calvillo") (last visited March 11, 2024) (showing Mr. Calvillo is eligible for parole). Because Mr.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Calvillo was sentenced to a term of years to life, the good time credit forfeiture delays his parole

2  eligibility date by 30 days. *See* Cal. Code Regs. tit. 15, § 2400 (stating that a prisoner may "reduce

3  the minimum eligible parole date" by earning good conduct time). But even after Mr. Calvillo's

4  parole eligibility date arrives, he is not guaranteed release; instead, the parole board will determine

5  whether or not to release him. *See id*. ("The length of time a prisoner must serve prior to actual

6  release on parole is determined by the board."); *see also id*. § 2402 (describing criteria which the

7  panel of the parole board may consider).

8       The United States Supreme Court has held that where an intervening decision by a parole

9  board is required before a prisoner may be released, it is not "inevitabl[e]" that the disciplinary

10 proceedings will "affect the duration of [plaintiff's] sentence," so the deprivation does not "invoke

11 the procedural guarantees of the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 487

12 (1995) (concluding that where plaintiff was sentenced to thirty years to life, the possibility that a

13 disciplinary infraction might result in the denial of parole was "too attenuated" to support a claim).

14      Nor does a delay of the parole hearing constitute an "atypical and significant hardship."

15 *See id*.; *cf. Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (suggesting that even though

16 placement in a solitary confinement unit disqualified an otherwise eligible prisoner from parole

17 consideration, this "standing alone might not be sufficient to create a liberty interest," and holding

18 that the plaintiff's liberty interest was created only by the combination of disqualification for

19 parole with a near total prohibition on human contact, 24 hour illumination, limited exercise, and

20 indefinite duration); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7

21 (1979) ("There is no constitutional or inherent right of a convicted person to" parole.).

22      In short, because Mr. Calvillo's loss of good time credits at most delays the parole board's

23 intervening decision, that loss does not implicate a liberty interest sufficient to trigger the Due

24 Process Clause. *See, e.g.*, *Barno v. Padilla*, No. 20-CV-03886-SI, 2020 WL 6544427, at *3 (N.D.

25 Cal. Nov. 6, 2020); *Ernest v. Van Blarcom*, No. C-16-3655-WHA-PR, 2018 WL 9651054, at *3

26 (N.D. Cal. Aug. 16, 2018); *Rouser v. Crounse*, No. 19-CV-00550 -GSA-PC, 2020 WL 4368303,

27 at *5 (E.D. Cal. July 30, 2020); *Armenta v. Paramo*, No. 16-CV-02931-BTM-KSC, 2018 WL

28 4612662, at *8 (S.D. Cal. Sept. 25, 2018).

The other punishments meted out to Mr. Calvillo similarly fail to trigger the Due Process Clause. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding that there is no constitutional right to canteen items), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (finding "there is no liberty interest in" the loss of recreational programs), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995); *Mahon v. Prunty*, 87 F.3d 1320 (9th Cir. 1996) (finding no liberty interest in family visits, telephone calls, or yard access) (unpublished); *Davis v. Small*, 595 F. App'x 689, 691 (9th Cir. 2014) (finding no liberty interest in telephone or yard privileges); *Gray v. Celaya*, No. 17-CV-02395-WHO (PR), 2018 WL 2971117, at *3 (N.D. Cal. June 13, 2018) ("Because Gray has no entitlement to have property in prison, his due process property claim fails as a matter of law."); *accord Schrubb v. Tilton*, No. C-08-2986 TEH (PR), 2014 WL 4129577, at *5 (N.D. Cal. Aug. 21, 2014) ("Plaintiff does not cite any state law or prison regulation that authorizes or entitles him to possess personal property in prison); *see also Sandin*, 515 U.S. at 500 (Breyer, J., dissenting) (describing the "'[l]oss of privileges' such as "community recreation; commissary; . . . personal visits . . . ; personal phone calls . . .." as "less significant" and "comparatively unimportant prisoner 'deprivations'").

Because Mr. Calvillo has not identified a protected liberty interest that was affected by the disciplinary proceeding here, defendant Marquez is entitled to summary judgment on Mr. Calvillo's due process claim.

## IV.    CONCLUSION

For the foregoing reasons, defendant Marquez's motion for summary judgment is **GRANTED**. Mr. Calvillo's motion to file a sur-reply is **DENIED**.

The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: March 26, 2024

P. Casey Pitts
United States District Judge